**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ALBERT PICKARD,
individually and on behalf of all other persons similarly
situated who were employed by ONSITE FACILITY
SERVICES, LLC and/or any other entities affiliated
with or controlled by ONSITE FACILITY SERVICES,
LLC,

5:22-cv-207
(AMN/ML)

Plaintiffs,

v.

ONSITE FACILITY SERVICES, LLC
and other related entities,

Defendant.

---

**APPEARANCES:**                                    **OF COUNSEL:**

**GATTUSO & CIOTOLI, PLLC**                          **FRANK S. GATTUSO, ESQ.**
The White House                                     **RYAN G. FILES, ESQ.**
7030 East Genesee Street
Fayetteville, New York 13066
Attorneys for Plaintiffs

**BARCLAY DAMON LLP**                                **EDWARD G. MELVIN, ESQ.**
Barclay Damon Tower                                 **ROSS M. GREENKY, ESQ.**
125 East Jefferson Street
Syracuse, NY 13202
Attorneys for Defendant

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On March 4, 2022, Albert Pickard ("Named Plaintiff"), on behalf of himself and similarly

situated persons who are presently or formerly employed by OnSite Facility Services, LLC

("OnSite" or "Defendant") and/or any other entities affiliated with or controlled by OnSite in

trades and occupations entitled to receive overtime compensation (collectively, "Plaintiffs"), brought this putative class action against Defendant alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207, and 216(b) ("FLSA"); New York Labor Law §190 *et seq.*; New York Labor Law §§ 650 *et seq.*, 663 (together, "NYLL"); 12 New York Codes, Rules and Regulations ("NYCRR") §§ 142 *et seq.*  *See* Dkt. No. 1[1] ("Complaint").

On October 13, 2022, the parties engaged in a mediation before Magistrate Judge David E. Peebles but were unable to reach a settlement at that time.  Dkt. No. 27 at 7; September 2, 2022 Text Notice of Mediation.  By a letter dated November 16, 2022, the parties reported to Magistrate Judge Miroslav Lovric that they had reached a settlement in principle.  Dkt. No. 20.

On February 6, 2023, Plaintiffs filed an unopposed motion for Preliminary Approval of Class Action Settlement.  *See* Dkt. No. 27.  After reviewing the documents provided by Plaintiffs, the Court granted Preliminary Approval on June 8, 2023.  *See* Dkt. No. 31.  On September 25, 2023, Plaintiffs filed an unopposed motion for Final Approval of the Class Action Settlement (the "Motion").  *See* Dkt. No. 32.  The Court held a fairness hearing on October 10, 2023, during which the Court expressed its intent to approve the settlement provided that Defendant permit the sole late-filed claim to proceed as though it had been timely filed—and advised that a written decision would follow.

For the reasons set forth below, Plaintiffs' Motion is granted.

## II.     BACKGROUND

### A.     Factual Background

Defendant Onsite is a New York corporation, Dkt. No. 1 at ¶ 12, involved in the business

---

[1] Citations to Court documents utilize the pagination generated by CM/ECF docketing system and not the documents' internal pagination.

of property design, management, and maintenance, *id.* at ¶ 27.  Named Plaintiff is a resident of

New York, and is employed by Defendant as a full-time, nonseasonal maintenance worker.  *Id.* at

¶ 10.  Named Plaintiff commenced his employment with Defendant in or around December 2018.

*Id.* at ¶ 25.  Through counsel, Gattuso & Ciotoli, PLLC ("Class Counsel"), Plaintiffs brought this

putative class action alleging violations of the FLSA, NYLL and NYCRR.  *See id.* at ¶ 1.  Plaintiffs

allege that Defendant (i) "has engaged in a policy and practice depriving its employees of the

applicable straight time wages and overtime wages for work they performed," *id.* at ¶ 2, (ii) "has

engaged in a policy and practice of requiring its employees to regularly work in excess of 40 hours

a week, without providing overtime compensation," *id.* at ¶ 3, and (iii) "failed to provide

appropriate wage notices," *id.* at ¶ 4.  More specifically, Plaintiffs allege that OnSite would

"unilaterally edit the clock-in times . . . after they would arrive at the work facility early under

Defendant's orders and perform work-related tasks prior to the scheduled start time of their shifts,

resulting in a failure by Defendant to properly account for and pay for all hours worked," and

"maintained a common policy and practice of automatically deducting meal breaks from [their]

pay . . . whether or not Plaintiff[s] actually took a meal break, resulting in a failure by Defendant

to properly account for and pay for all hours worked."  Dkt. No. 27-1 at 6-7.

    **B.**    **The Settlement Agreement**[2]

    The Settlement Agreement reached by the parties provides that Defendant will pay a total

sum of up to $175,000 ("Total Settlement Amount") to "fully and finally resolve the claims at

issue in this litigation in their entirety including, but not limited to, all claims and demands for

attorneys' fees, expenses and costs; interest; back wages; and liquidated/statutory damages."  Dkt.

---

[2] The capitalized terms used that are not defined herein shall have the meaning and/or definitions
given to them in the Settlement Agreement provided to the Court.  *See* Dkt. No. 32-3.

No. 32-3 at ¶ 3(a).  The Total Settlement Amount is intended to cover: the total award of fees and costs to Class Counsel, the total award of a service payment, the full cost of administration of the settlement and claims process, all payments to be made to class members pursuant to the settlement, the full amount of W-2 withholdings (and state/local withholdings if applicable) on the payments to be made to the class members pursuant to the settlement, and any employer share of payroll taxes on the payments to be made to the class members under the settlement.  *Id.*  Defendant will deposit the settlement funds into a qualified settlement fund that will be established and administered by the Settlement Administrator, Martom Solutions, LLC.  *Id.* at ¶¶ 6, 10.  The parties agree that all amounts undistributed from the Total Settlement Amount will be returned to Defendant.  *Id.*  at ¶ 3(b).  Those who filed a valid claim form will receive a settlement check that is calculated in accordance with the following formula:

> A Settlement Class Member's Individual Gross Amount shall be based on his or her percentage of weeks worked as against all weeks worked by the Settlement Class between March 4, 2016, through the date of entry of the Preliminary Approval Order, based upon the initial hiring and termination dates for each Settlement Class Member which Defendant will provide to Class Counsel and the Settlement Claims Administrator.

> Each Settlement Class Member's percentage is calculated by (1) taking the individual Settlement Class Member's total weeks worked during the relevant period as the numerator, and (2) dividing it by the sum of all weeks worked by all Settlement Class Members as the denominator.  The denominator for each Settlement Class Member will be the same number.  As a result of this calculation, the total of all Settlement Class Members' numerators must equal the denominator.  Thus, the Settlement Class Member's individual weeks worked divided by the sum of all weeks worked for all Settlement Class Members, equals his/her individual percentage allocation.

> The Net Settlement Amount shall be multiplied by each Settlement Class Member's percentage allocation as calculated in Section 9(b).  This represents the individual amount allocated to each Settlement Class Member – or Individual Gross Amount.

*Id.* at ¶ 9.  Additionally, the Named Plaintiff will receive $7,500 as a service fee from the fund.

Dkt. No. 32-1 at 26.  The Settlement Administrator will receive $8,050 for its services.  Dkt. No.

4

32-4 at 6.  Class Counsel seeks fees totaling $57,750, which represents 33% percent of the Settlement Fund.  *Id.*  Class Counsel does not seek a separate fee for costs.

On or before February 16, 2023, in conjunction with the Settlement Administrator, Defendant complied with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715(d).  *See* Dkt. No. 32-3 at ¶ 7(a).  The Settlement Administrator assumed responsibility for the "dissemination of Notice Packets to members of the Settlement Class."  *Id.* at ¶ 6(a).  The Settlement Administrator received the Court-approved Notice Packet on June 8, 2023.  Dkt. No. 32-4 at 4.  After receiving a mailing list for all 89 Settlement Class Members from Defendant on or about June 22, 2023, the Settlement Administrator utilized the United States Postal Service's National Change of Address Database to update the mailing list.  *Id.*  On July 6, 2023, Notice Packets were mailed to all 89 Settlement Class Members.  *Id.*  After 26 were returned as undeliverable, the Settlement Administrator utilized LexisNexis to locate updated addresses, and sent Notice Packets to those addresses accordingly.  *Id.* at 4-5.  After further efforts, five of these 26 Notice Packets were unsuccessfully delivered, accounting for 5.6% of Settlement Class Members.  *Id.* at 5.

In response to the Notice Packets, the Settlement Administrator received one opt-out request and zero objections to the settlement from Settlement Class Members.  *Id.*  Thirty-eight of the 89 Settlement Class Members returned timely and complete claims, with one additional claim returned after the submission deadline.  *Id.*  During the Court's final fairness hearing, Defendant agreed to permit the sole late claim to proceed as though it had been timely filed.  As a result, thirty-nine of the 89 Settlement Class Members will recover in this settlement, amounting to a participation rate of 43.8%.  *See id.*

The Settlement Class Members who did not file a valid opt-out request agree to release

Defendant "from any claim under the FLSA, NYLL, or any other federal, state or local law for unpaid wages, overtime pay, interest, attorneys' fees, expenses, expert fees, costs, liquidated damages, or other penalties or relief for failure to appropriately compensate for all time worked or record keeping violations, including without limitation all claims that were asserted or could have been asserted based on any allegations raised or which could have been raised in [this action]." *See* Dkt. No. 32-3 at ¶ 14.

## III.    DISCUSSION

### A.    Class Certification

#### 1.    Rule 23

On June 8, 2023, the Court preliminarily certified the Settlement Class.[3]  *See* Dkt. No. 31. "Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in [Fed. R. Civ. P.] 23(a) and (b) have been satisfied."  *In re Am. Int'l Grp., Inc. Sec. Litig. (In re AIG)*, 689 F.3d 229, 238 (2d Cir. 2012) (citation omitted). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems" precluding findings of predominance under Rule 23(b)(3).  *Amchem Prods., Inc.  v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re AIG*, 689 F.3d at 242 ("[M]anageability concerns do not stand in the way of certifying a settlement class").

Rule 23(a) sets forth four prerequisites for class certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

---

[3] The Settlement Class consists of all individuals who were employed by OnSite Facility Services, LLC as a full-time, non-seasonal hourly laborer at any time from March 4, 2016, through June 8, 2023.  Dkt. No. 31.

of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  The Second Circuit "has also recognized an implied requirement of ascertainability in Rule 23, which demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (internal quotation marks and citation omitted).  A class action may be maintained if the requirements of Rule 23(a) are satisfied and, as relevant here, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility in deciding whether to grant certification." *Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 WL 736962, *5 (N.D.N.Y. Feb. 25, 2021) (internal quotation marks and citation omitted).

### a)     *Numerosity*

Numerosity "is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted).  Here, the proposed class satisfies the numerosity requirement because there 89 class members.  Dkt. No. 32-1 at 12.

### b)     *Commonality*

The purpose of the commonality requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Lowe v. NBT Bank, N.A.*, No. 3:19-CV-1400 (MAD/ML), 2022 WL 4621433, at *4 (N.D.N.Y. Sept. 30, 2022) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).  "Although the claims need not be identical, they must share common

questions of fact or law." *Id.* (citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005)).  Courts liberally construe the commonality requirement.  *Id.* (citation omitted).

Here, Plaintiffs bring identical claims, including that Defendant failed to pay them regular and overtime wages for hours worked, in violation of the FLSA and New York wage and hour laws.  *See* Dkt. No. 32-1 at 7-8.  Courts regularly find such allegations sufficient to satisfy the commonality requirement.  *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 , 615-16 (S.D.N.Y 2012); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2010 WL 1948198, at *3 (S.D.N.Y May 11, 2010).

### c) *Typicality*

Rule 23(a)(3) requires that the representative plaintiff's claims or defenses "are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality requires that a class representative have "the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Story*, 2021 WL 736962, at *5 (internal quotation marks and citation omitted).  "The requirement is met if . . . (1)  [the] 'claims of representative plaintiffs arise from [the] same course of conduct that gives rise to claims of the other class members,' (2) . . . 'the claims are based on the same legal theory,' and (3) . . . 'the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representative.'"  *Id.* (quoting *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000)).

Here, Named Plaintiff's claim is identical to the Settlement Class Members' claims. Defendant failed to pay Named Plaintiff and the Settlement Class Members regular and overtime wages for hours worked pursuant to the same company policies and practices, and failed to provide appropriate wage notices.  Dkt. No. 32-1 at 7-8.  As such, the typicality requirement is satisfied.

*See Morris*, 859 F. Supp. 2d at 616; *Frank*, 228 F.R.D. at 182.

### d)   *Adequacy of the Named Plaintiff and Class Counsel*

Under this factor, the Court inquires as to "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). "The adequacy requirement exists to ensure that the named representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of the other class members.'" *Story*, 2021 WL 736962, at *6 (quoting *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007)).

Here, all Settlement Class Members, including Named Plaintiff, suffered similar harm because of the same alleged acts and omissions by Defendants. *See* Dkt No. 1 at ¶¶ 16-17. Named Plaintiff seeks monetary relief on his own behalf and on behalf of the Class. *See id.* at ¶ 84. There is no evidence that the interests of Named Plaintiff and the other Settlement Class Members are at odds. Rather, the record reflects that Named Plaintiff and the Settlement Class Members have the same incentive to maximize their compensation for past harm. Moreover, the Court finds that Class Counsel is experienced in wage and hour class action litigations. *See* Dkt. No. 32-2 at ¶ 5. As such, the Court finds that the adequacy requirement is met.

### e)   **Certification is Proper Under Rule 23(b)(3)**

Pursuant to Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Under

Rule 23(b)(3), the "matters pertinent" to these requirements include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3) (A-D).  Satisfaction of Rule 23(a) "goes a long way toward satisfying the

Rule 23(b)(3) requirement of commonality."  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598

(2d Cir. 1986) (citing *Falcon*, 457 U.S. at 157 n.13).

Here, Plaintiffs have satisfied the requirements of Rule 23(b)(3).  As discussed, common

questions of law and fact predominate over any questions that might affect an individual Plaintiff.

Further, a class action is far superior to requiring each Settlement Class Member's claim to be tried

individually given the relatively modest value of each Settlement Class Member's claim.

Additionally, certifying the proposed Settlement Class will conserve judicial resources and is more

efficient for the Settlement Class Members, particularly those who lack the resources to bring their

claims individually.   Accordingly, the Court grants Plaintiffs' motion insofar as it seeks class

certification for settlement purposes.

### B.      Fairness of the Proposed Settlement

#### 1.      Standard of Review

"The compromise of complex litigation is encouraged by the courts and favored by public

policy."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (citation

omitted).  Under Rule 23(e), a court may grant final approval of a proposed settlement "only after

a hearing and only on finding that it is fair, reasonable, and adequate. . .."  Fed. R. Civ. P. 23(e)(2).

To perform this evaluation, courts in this Circuit rely on two overlapping multi-factor tests—the

factors enumerated in Rule 23(e)(2) and the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).[4]  *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28-29 (E.D.N.Y. 2019).  Rule 23(e)(2) requires courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[5]

> Under *Grinnell*, the Court also considers the following factors
>
> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citation omitted).

---

[4] The Court understands the factors set forth in the 2018 amendment of Rule 23(e)(2) as clarifying and supplementing the *Grinnell* factors.  *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("The goal of this amendment is not to displace any factor, but rather to focus . . . on the core concerns of procedure and substance that should guide the decision.").

[5] "Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'"  *In re Payment Card*, 330 F.R.D. at 29 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). Whereas "[p]aragraphs (C) and (D) constitute the 'substantive' analysis factors, and examine '[t]he relief that the settlement is expected to provide to class members . . ..'"  *Id.* (citation omitted).

### 2.      The Settlement is Procedurally Fair

"A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation." *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-7192-CM, Case No. 1:18-cv-09784-CM, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) (citations omitted).   This presumption of fairness and adequacy applies here.

Based on the submissions before the Court, the Court concludes that the counsel representing the parties are experienced and capable in the litigation at issue here.  The Court must next consider whether the parties' proposed settlement is the product of an arm's length negotiation.   *See* Fed. R. Civ. P. 23(e)(2)(B).   An arm's-length negotiation occurs between "experienced, capable counsel after meaningful discovery."   *Wal-Mart Stores, Inc.*, 396 F.3d at 116.  Here, the settlement was reached after (i) the parties conducted a thorough investigation and evaluated the claims and defenses and (ii) the parties engaged in discovery.   *See* Dkt. No. 32-1 at 8.  Specifically, Class Counsel obtained and examined relevant data from the Defendant, such as the number of full-time hourly employees, titles of different positions, Named Plaintiff's time, payroll, and attendance records, and policy and procedure materials regarding meal breaks, and conducted interviews of current and former OnSite employees.  *See id.* at 8, 19.  On October 13, 2022, the parties also participated in mediation before Magistrate Judge David E. Peebles, and shortly thereafter, reached a final settlement.   *See id.* at 8.   Accordingly, the Court finds that the requirements of Rule 23(e)(2)(A)-(B) have been satisfied.

### 3.      The Settlement is Substantively Fair

#### a)      The Complexity, Expense, and Likely Duration of Litigation

The first *Grinnell* factor evaluates whether the continuation of the litigation would be complex, expensive, and lengthy.  *See Grinnell*, 495 F.2d at 463.  This case, had it not settled, would have been all three.  "Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them."  *Edwards v. Mid-Hudson Valley Fed. Credit Union*, 1:22-cv-00562 (TJM/CFH), 2023 WL 5806409, at \*12 (N.D.N.Y. Sept. 7, 2023) (citation omitted).  This case is no exception.  Additionally, settlement of this matter avoided the delay that necessarily would have followed, including motion practice and the time needed for the Court to act on those motions.   Moreover, had the case reached trial, such trial would consume tremendous time and resources for all parties and the Court.  *See* Dkt. No. 32-1 at 12.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

#### b)      The Reaction of the Class

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Story*, 2021 WL 736962, at \*8 (internal quotation marks and citation omitted).  The "lack of class member objections may itself be taken as evidencing the fairness of a settlement."  *Id.* (internal quotation marks and citation omitted).

Here, there have been no objections to the settlement and only one Settlement Class Member opted out.  Dkt. No. 32-1 at 10-11.  As such, this factor favors final approval.  *See Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

          **c)**      **The Stage of the Proceedings and the Amount of Discovery Completed**

"The third *Grinnell* factor considers the amount of discovery completed, with a focus [] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Story*, 2021 WL 736962, at *8 (alternation in original, internal quotation marks and citation omitted).

Here, the parties reached a settlement after engaging in discovery but before the filing of summary judgment motions.   In connection with this action, Class Counsel "investigated Defendant's business operation, including communicating with the Named Plaintiff and other employees in similar positions to ascertain the nature of the claims," and "conducted legal research on the underlying merits of the potential class claims, the proper measure of damages, and Defendant's affirmative defenses."   Dkt. No 32-1 at 13-14.   Additionally, "Defendant produced employment records, including payroll and time records for the Named Plaintiff as well as documentation of Defendant's corporate policies with respect to Plaintiffs' claims, which [Class] Counsel reviewed." *Id.*   As a result, the Court finds that the parties completed sufficient discovery to reach a settlement.   Accordingly, this factor weighs in favor of final approval.

          **d)**      **Risk of Establishing Liability and Damages and Maintaining Class Action**

The fourth, fifth, and sixth *Grinnell* factors, which address "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial," also strongly support final approval. *See Grinnell*, 495 F.2d at 463.   "In assessing the fourth, fifth, and sixth factors which are often considered together, the Court is not required to decide the merits of the case, resolve unsettled legal questions, or to foresee with absolute certainty the outcome of the case." *Story*, 2021 WL 736962, at *8-9 (internal quotation

marks and citation omitted).  "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id.* (internal quotation marks and citation omitted).  "In assessing the risks, courts recognize that the complexity of Plaintiff's claims ipso facto creates uncertainty." *Id.* (internal quotation marks and citation omitted).

Here, while Plaintiffs and Class Counsel believe that they would prevail on their claims asserted against Defendant, they also recognize the risks and uncertainties inherent in pursuing the action through class certification, summary judgment, trial, and appeal. *See* Dkt. No. 32-1 at 14-15.  A trial on the merits would involve risks for Plaintiffs as to both liability and damages. *Id.* Among other things, Plaintiffs recognizes the risks involved in overcoming Defendant's challenges to Plaintiffs' damages calculations. *Id.*  As such, the Court finds that the fourth, fifth, and sixth *Grinnell* factors weigh in favor of granting final approval.

### e) Defendant's Ability to Withstand a Greater Judgment

The seventh *Grinnell* factor addresses the defendant's ability to withstand a greater judgment. *See Grinnell*, 495 F.2d at 463.  "Even assuming that it could withstand a greater judgment, 'this factor, standing alone, does not suggest that the settlement is unfair.'" *Story*, 2021 WL 736962, at *9 (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)).  "Indeed, a defendant is not required to empty its coffers before a settlement can be found adequate." *Id.* (internal quotation marks and citation omitted).  Here, this factor is, at best, neutral, and does not suggest that the settlement is unfair.

### f) Range of Reasonableness

The final two *Grinnell* factors, "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation," also support final approval. *See*

*Grinnell*, 495 F.2d at 463.   "Courts typically analyze the final two *Grinnell* factors together."
*Story*, 2021 WL 736962, at *9 (citing *In re Global Crossing Secs. and ERISA Litig.*, 225 F.R.D.
436, 460 (S.D.N.Y. 2004)).   "In analyzing these two factors, a reviewing court 'consider[s] and
weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise
of business judgment in determining whether the proposed settlement is reasonable.'"   *Id.* (quoting
*Grinnell*, 495 F.2d at 462).   "The determination of whether a settlement amount is reasonable 'does
not involve the use of a mathematical equation yielding a particularized sum.'"   *Id.* (quoting
*Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669 (BMC), 2012 WL 5874655, at *5
(E.D.N.Y. Nov. 20, 2012)).   "Rather, there is a range of reasonableness with respect to a
settlement—a range which recognizes the uncertainties of law and fact in any particular case and
the concomitant risks and costs necessarily inherent in taking any litigation to completion."   *Id.*
(internal quotation marks and citation omitted).   "Moreover, the settlement amount must be judged
'not in comparison with the possible recovery in the best of all possible worlds, but rather in light
of the strengths and weaknesses of plaintiffs' case."   *Id.* (internal quotation marks and citation
omitted).   "The overall value of the settlement comprises monetary as well as non-monetary relief."
*See id.* (citing *Velez v. Novartis Pharm. Corp.*, No. 04-CV-09194 (CM), 2010 WL 4877852, at
*18 (S.D.N.Y. Nov. 30, 2010) (holding that both the monetary and non-monetary relief must be
considered in calculating the value of a settlement)).

Here, Plaintiffs risk-reward calculation appears reasonable in light of the attendant risks of
litigation discussed above.   Although the Total Settlement Amount of $175,000 is approximately
16% of the maximum recovery of unpaid wages of $1,064,700 calculated by Class Counsel, it does
not render the settlement outside of the range of reasonableness.   *See, e.g., Cagan v. Anchor Sav.
Bank FSB*, No. CV-3024, 1990 WL 73423, *34-35 (E.D.N.Y. May 22, 1990) (approving $2.3

million class settlement over objections that the "best possible recovery would be approximately $121 million").  Thus, weighing the benefits of settlement against the available evidence and the risks associated with proceeding in the litigation, the Court finds that the recovery is fair and reasonable.

### g)      Rule 23(e)(2)(C)-(D)

Rule 23 also requires the Court to consider whether the relief provided in the Settlement is adequate and whether the proposed Settlement treats the Settlement Class Members equitably relative to each other.  As discussed above, the record demonstrates that the settlement provides adequate relief to the Settlement Class Members by avoiding the cost and risk of further litigation and the parties have proposed an effective method for processing and allocating Settlement Class Members' claims.  The Settlement Agreement calls for an allocation based on a formula driven by the number of hours worked by a Settlement Class Member in the relevant period.  Dkt. No. 32-3 at ¶ 9.  The Court finds that this allocation is reasonable and treats all Settlement Class Members in an equitable manner.  *See Story*, 2021 WL 736962, at *10 (citations omitted).

Finally, as discussed in detail below, Plaintiffs' proposed award of attorneys' fees is reasonable and the parties filed the Settlement Agreement required by Rule 23(e)(3), including the attorneys' fees awarded pursuant to the settlement, on the docket.  *See* 5 William B. Rubenstein, Newberg on Class Actions § 15:12 (5th ed. 2018).

### C.    Service Award

Named Plaintiff seeks a Service Award of $7,500 for serving as class representative.  Dkt. No. 32-1 at 26-27.  Class Counsel argues that this service award is appropriate and reasonable in light of the substantial and meaningful work that Named Plaintiff has contributed.  *Id.*  "Courts regularly grant requests for service awards in class actions to compensate plaintiffs for the time

and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Story*, 2021 WL 736962, at *11 (internal quotation marks and citation omitted).  A service award of $7,500 for the Named Plaintiff is reasonable and within the range of awards granted in this Circuit.  *See Morris*, 859 F. Supp. 2d at 624 (finding a service award of $7,500 reasonable).  Accordingly, the Court grants Named Plaintiff's service award of $7,500.

D.      **Settlement Administrator Costs**

Class Counsel also seeks that the Settlement Administrator be paid out of the Total Settlement Fund.  Dkt. No. 32-3 at ¶ 6(b).  Notice of this selection was provided to the Settlement Class Members and the Court has not received any objections.  The Court finds that this expense is in line with cases of a similar nature.  *See, e.g., Baudin v. Res. Mktg. Corp., LLC*, No. 1:19-CV-386 (MAD/CFH), 2020 WL 4732083, at *13 (N.D.N.Y. Aug. 13, 2020).  Accordingly, the Court grants Class Counsel's request.

E.      **Attorneys' Fees**

Class Counsel moves for an award of attorneys' fees in the amount of $57,750, which constitutes 33% of the Total Settlement Fund.  Dkt. No. 32-1 at 17.

i.  **Method of Calculating Attorneys' Fees**

"Attorneys who create a common fund from which members of a class are compensated are entitled to a reasonable fee—set by the court—to be taken from the fund." *Story*, 2021 WL 736962, at *11 (internal quotation marks and citations omitted).  "Such a fee award directly depletes the amount by which the class benefits." *Id.*  "Accordingly, the Court has a duty to award fees with moderation and a regard for the rights of those with an interest in the fund who are not before the Court." *Id.* (citation omitted).

The Second Circuit has sanctioned two methods—the percentage method and lodestar method—for calculating reasonable attorneys' fees in class actions. *See Goldberger v. Integrated Res., Inc*., 209 F.3d 43, 50 (2d Cir. 2000). "The Court has discretion to award fees based on either the percentage method or the lodestar method." *Story*, 2021 WL 736962, at *11 (citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)). "Courts in this Circuit routinely use the percentage method to compensate attorneys in common fund cases such as this action." *Id.* at *12 (citations omitted). The "percentage method" is the far simpler method "by which the fee award is some percentage of the fund created for the benefit of the class." *Id.* (internal quotation marks and citations omitted). Under either method, the touchstone of the inquiry is whether the award is reasonable. *See Goldberger*, 209 F.3d at 50. A court determines reasonableness by evaluating: (1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy. *Id.* (citation omitted).

### a. Comparison to Court-Approved Fees in Other Common Fund Settlements

"In using the percentage of the fund approach, the Court must first determine a baseline reasonable fee percentage in relation to the settlement, using common fund settlements of similar magnitude and complexity as guidance." *Story*, 2021 WL 736962, at *12 (citation omitted). "Additionally, a sliding scale approach—awarding a smaller percentage of the settlement as the amount of the settlement fund increases—is appropriate in order to avoid overcompensating the plaintiff's counsel to the detriment of the class members they represent." *Id.* (citations omitted).

Class Counsel contends that a fee of 33% of the Total Settlement Fund is reasonable. The Court finds that it is a reasonable baseline in the present matter. *See Edwards,* 2023 WL 5806409,

at \*7 (awarding class counsel ~33% of the Settlement Fund); *Lowe*, 2022 WL 4621433, at \*5 (same); *Baudin*, 2020 WL 4732083, at \*13 (same).

### b.   Class Counsel's Labor and Time

Class Counsel expended significant effort to achieve the $175,000 settlement.   Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Dkt. No. 32-1 at 19.   Class Counsel, among other things, engaged in discovery, conducted legal research, took part in mediation, negotiated the terms of the Settlement Agreement, and spent time drafting and filing the motion for Preliminary Approval and this Motion.   *Id.*   In addition, Class Counsel worked with the Settlement Administrator to facilitate the claims process.   *Id.*

In performing these and other tasks, Class Counsel asserts that it spent 105 hours litigating this matter and estimates that it will incur additional hours overseeing the final administration of the settlement and other post-final approval matters.   *Id.* at 26.

Considering the complexity of class actions in general and the overall result obtained, the Court finds that the time spent by counsel is reasonable and supports the requested award.

### c.   Complexity of the Case

The magnitude and complexity of this case also supports the requested award.   "Most class actions are inherently complex, and settlement avoids the costs, delays and multitudes of other problems associated with them."   *Story*, 2021 WL 736962, at \*13 (internal quotation marks and citation omitted).   Courts have recognized that "FLSA claims typically involve complex mixed questions of fact and law . . ..   These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

### d.  Risk of Litigation

Class Counsel undertook risk in accepting the case on a contingency basis.  Dkt. No. 32-1 at 20; *see Story*, 2021 WL 736962, at *13.  In the face of the risk of no recovery, Class Counsel proceeded with the litigation and obtained a favorable outcome for the class.  Thus, Class Counsel invested extensive time and costs with no guarantee of success.  As such, the Court finds that the requested award is commensurate with the risks of litigation.

### e.  Quality of Representation

Class Counsel competently and efficiently represented Plaintiffs in this action.  As such, this factor supports the requested award.

### f.  Policy Considerations

Lastly, the attorneys' fees award may be altered due to policy considerations.  *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014).  Attorneys' fees should reflect the important public policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Goldberger*, 209 F.3d at 51 (citation omitted). "On the other hand, fees should compensate counsel only for the value they create, or the court risks incentivizing class counsel to settle cases in a manner detrimental to the class." *Story*, 2021 WL 736962, at *13 (citation omitted).  Here, Class Counsel obtained a favorable settlement in an efficient manner.  Ultimately, Class Counsel's fee award is tied directly to the value of the negotiated settlement.  Accordingly, the Court finds that an award of 33% of the Total Settlement Fund for attorneys' fees is supported by policy considerations.

### g.  Lodestar Cross-Check

In assessing the reasonableness of a fee award, the Court may use the lodestar amount as a cross-check to the fees awarded under the percentage of the fund method.  *See In re Citigroup Inc.*

*Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013).  When the lodestar method is used as a cross-check, "the Court need not exhaustively scrutinize the hours documented by class counsel; instead, the reasonableness of the lodestar can be tested by the court's familiarity with the case." *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 WL 3995619, *19 (S.D.N.Y. Sept. 11, 2017) (internal quotation marks and citation omitted).

Here, Class Counsel asserts that its lodestar is approximately $36,175, thereby making Class Counsel's request for 33% of the Total Settlement Fund to be 1.56 their lodestar.  Dkt. No. 32-1 at 25.  The lodestar multiplier further supports the Court's decision that the attorneys' fees award should be based on the Total Settlement Fund.  *See e.g, Sewell v. Bond Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *13 ("Courts routinely award lodestar multipliers between two and six."); *In re Lloyd's Am. Trust Fund Litig.,* No. 96 Civ. 1262 RWS, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit").  Accordingly, the Court finds that Class Counsel is entitled to $57,750 in reasonable attorney's fees.

## IV.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** Plaintiffs' unopposed motion for Final Approval of the Class Action Settlement, Dkt. No. 32, is **GRANTED**; the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiffs' favor and close this case; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 25, 2023
     Albany, New York

_____
Anne M. Nardacci
U.S. District Judge